# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNY JOLLY, GABRIELLE BARDEQUEZ; individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC; PFIZER INC,<br><br>   Defendants. | Civil Action No.:<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br>1. **Violation of New York's Gen. Bus. Law § 349**<br>2. **Violation of New York's Gen. Bus. Law § 350**<br>3. **Breach of Warranty**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page No.**

COMPLAINT ................................................................................................................ 1

I.    NATURE OF THE ACTION ............................................................................. 1

II.    JURISDICTION ................................................................................................ 9

III.    VENUE .............................................................................................................. 10

IV.    PARTIES ........................................................................................................... 10

    A.  Plaintiffs ................................................................................................... 10

    B.  Defendants ................................................................................................ 12

V.    FACTUAL ALLEGATIONS ........................................................................... 13

    A.  The Materiality and Consumers' Perception of the Products' Challenged Representations ......................................................................... 13

    B.  The Falsity of the Challenged Representations ....................................... 15

    C.  Plaintiffs and Reasonable Consumers Were Misled by the Products ..... 17

    D.  The Products are Substantially Similar ................................................... 19

VI.    CLASS ACTION ALLEGATIONS ................................................................. 20

VII.    CAUSES OF ACTION ..................................................................................... 22

    COUNT ONE................................................................................................22
        Violation of New York's Gen. Bus. Law § 349
        (On Behalf of the New York Subclass)

    COUNT TWO................................................................................................24
        Violation of New York's Gen. Bus. Law § 350
        (On Behalf of the New York Subclass)

    COUNT THREE................................................................................................25
        Breach of Warranty
        (On Behalf of the Nationwide Class and New York Subclass)

VIII.    PRAYER FOR RELIEF .................................................................................... 27

    JURY TRIAL DEMAND .................................................................................29

CLASS ACTION COMPLAINT

<u>**COMPLAINT**</u>

## I.   <u>NATURE OF THE ACTION</u>

1.      Plaintiffs Jenny Jolly and Gabrielle Bardequez (collectively, "**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), bring this class action against Defendants GlaxoSmithKline Consumer Healthcare Holdings (US) LLC ("**GSK**") and Pfizer Inc. ("**Pfizer**") (collectively, "**Defendants**"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge

2.      **Synopsis.**  In an effort to increase profits and to gain an unfair advantage over their lawfully acting competitors, Defendants falsely and misleadingly label certain of their ChapStick products with the following claims: "100% Natural," "Natural," "Naturally Sourced Ingredients," and/or "100% Naturally Sourced Ingredients" (hereinafter, "**Natural Representations,**" "**Challenged Representations,**" and/or "**False Advertising Claims**"). Contrary to the Products' Natural Representations, as explained in detail below, the Products actually contain numerous non-natural, synthetic, artificial, and/or highly processed ingredients. Through falsely, misleadingly, and deceptively labeling the Products, Defendants sought to take advantage of consumers' desire for truly natural products.  Yet Defendants have done so at the expense of unwitting consumers, as well as Defendants' lawfully acting competitors, over whom Defendants maintain an unfair competitive advantage. Fair and accurate exemplars of the Products' front labels, with the Challenged Representation(s) outlined in red, are below:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

(a)  ChapStick 100% Natural Lip Butter (Green Tea Mint): Exemplar Front Label



CLASS ACTION COMPLAINT

(b) ChapStick Total Hydration 100% Natural Lip Care (Eucalyptus): Exemplar Front Label



(c)  ChapStick Total Hydration Essential Oils Lip Balm (Energy): Exemplar Front Label



CLASS ACTION COMPLAINT

(d) ChapStick Total Hydration Moisture + Tint Lip Balm (Coral Blush): Exemplar Front Label



(e)  ChapStick Total Hydration Moisture & Tint SPF 15 (Peachy Keen): Exemplar Front Label



(f) ChapStick Total Hydration Lip Scrub (Fresh Peppermint): Exemplar Front Label



CLASS ACTION COMPLAINT

3.   **Products.**   The products at issue are ChapStick® brand lip care products—manufactured and/or marketed by Defendants—that contain the Challenged Representations on the labels and/or packaging, in all sizes, scents and/or flavors, variations, sets or bundles, which include, but are not necessarily limited to, the following products:

a.   ChapStick 100% Natural Lip Butter, including the following scents

    (1)    Green Tea Mint;

    (2)    Pink Grapefruit;

    (3)    Sweet Papaya; and

    (4)    Cucumber Pear

("**Lip Butter**") (*see supra*, paragraph 2, a; *see also* **Exhibit 1-1 to Exhibit 1-4** [Product Images/Ingredients]);

b.   ChapStick Total Hydration 100% Natural Lip Care, including the following scents

    (5)    Eucalyptus Mint;

    (6)    Fresh Citrus;

    (7)    Honey Blossom; and

    (8)    Soothing Vanilla

("**Total Hydration Original**") (*see supra*, paragraph 2, b; *see also* **Exhibit 1-5 to Exhibit 1-8** [Product Images/Ingredients]);

c.   ChapStick Total Hydration Essential Oils Lip Balm, including the following variations

    (9)    Chill (Hemp Seed);

    (10)    Energy (Grapefruit and Lime);

    (11)    Happy (Orange and Lemon);

    (12)    Peace (Rosemary and Peppermint); and

    (13)    Relax (Lavender and Chamomile)

("**Total Hydration Essential Oils**") (*see supra*, paragraph 2, c; *see also* **Exhibit 1-9 to Exhibit 1-13** [Product Images/Ingredients]);

d.   ChapStick Total Hydration Moisture + Tint Lip Balm, including the following shades

    (14)    Coral Blush;

(15)    Flaunt It Fuchsia;

(16)    Hello Bordeaux;

(17)    Merlot;

(18)    Pink Nude;

(19)    Rose Petal;

(20)    Sunset Nude; and

(21)    Warm Nude

("**Total Hydration Tint**") (*see supra*, paragraph 2, d; *see also* **Exhibit 1-14 to Exhibit 1-21** [Product Images/Ingredients]);

e.    Chapstick Total Hydration Moisture+Tint SPF 15 Lip Balm, including the following scents

(22)    Peachy Keen;

(23)    Pretty In Pink; and

(24)    Very Berry

("**Total Hydration SPF**") (*see supra*, paragraph 2, e; *see also* **Exhibit 1-22 to Exhibit 1-24** [Product Images/Ingredients]); and

f.    ChapStick Total Hydration Natural Lip Scrub, including the following scents

(25)    Fresh Peppermint; and

(26)    Sugar Plum

("**Total Hydration Scrub**") (*see supra*, paragraph 2, f; *see also* **Exhibit 1-25 to Exhibit 1-26** [Product Images/Ingredients]).

The aforementioned Products are collectively referred to throughout this complaint as the "**Products**." *See* **Exhibit 1** [Product Images/Ingredients].

4.    **Crux.** The crux of this case is that the Products' ingredients are not natural, which is contrary to the product labeling and marketing.

## II.    <u>JURISDICTION</u>

5.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the

amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over Defendants because they conduct substantial business within New York, including the sale, marketing, and advertising of the Products.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this State, including Plaintiffs' purchases.

### III.    VENUE

7.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. Plaintiffs purchased the Products in this District, and Defendants have deliberately marketed, advertised, and sold the Products within this District.

### IV.    PARTIES

#### A.    Plaintiffs

8.      **Plaintiff Jenny Jolly.** The following is alleged based upon personal knowledge: (1) Plaintiff Jolly is a resident of Yonkers, New York.  (2) Plaintiff Jolly bought the ChapStick Total Hydration 100% Natural Lip Care (in Eucalyptus Mint) (*see* Exhibit 1-5) (the "**Jolly Purchased Products**") on Amazon, in the City of Yonkers, State of New York, in or around the winter of 2021, for approximately $3.00 each unit. (3) In making the purchase, the Challenged Representations, as depicted and set forth in the aforementioned exhibit, on the Products' label led Plaintiff Jolly to believe that the Products' ingredients were all natural and did not contain any non-natural, synthetic, or highly processed ingredients. (4) At the time of purchase, Plaintiff Jolly did not know that the aforementioned Challenged Representations were false—i.e., that the Products contain non-natural, synthetic, artificial, and/or highly processed ingredients. (5) Plaintiff Jolly would not have purchased the Products had she known that the Challenged Representations were false. (6) Plaintiff Jolly continues to see the Products available for purchase, desires to purchase them, and would, indeed, purchase them again if the Challenged Representations were in fact true—i.e., that the Products do not contain any non-natural, synthetic, or highly processed ingredients. (7) Plaintiff Jolly is not personally familiar with ingredients in the Products and does not possess any specialized knowledge, skill, experience, or education in the chemistry,

manufacturing, and formulation of cosmetic or personal care products, similar to and including the Products, and their ingredients and/or formulations. Therefore, Plaintiff Jolly has no way of determining whether the Challenged Representations on the Products are true. (8) Plaintiff Jolly is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' labels.

9.        **Plaintiff Gabrielle Bardeguez.** The following is alleged based upon personal knowledge: (1) Plaintiff Bardeguez is a resident of Middletown, New York.  (2) Plaintiff bought the (a) ChapStick 100% Natural Lip Butter (in Green Tea Mint) (*see* Exhibit 1-1), (b) ChapStick Total Hydration 100% Natural Lip Care (in Eucalyptus Mint) (*see* Exhibit 1-5), (c) ChapStick Total Hydration Essential Oils Lip Balm (in Chill and Relax) (*see* Exhibit 1-13), (d) ChapStick Total Hydration Moisture + Tint Lip Balm (in Flaunt It Fuchsia) (*see* Exhibit 1-15), and (e) ChapStick Total Hydration Lip Scrub (in Fresh Peppermint) (*see* Exhibit 1-25) (collectively, with the Purchased Products above, the "**Bardeguez Purchased Products**"), at a Convenience Store in the City of Middletown, State of New York, in or around 2021, for approximately $4.00-$5.00 each unit. (3) In making the purchase, the Challenged Representations on the Products' labels, as depicted and set forth in the aforementioned exhibits, led Plaintiff Bardeguez to believe that the Products' ingredients were all natural and did not contain any non-natural, synthetic, or highly processed ingredients. (4) At the time of purchase, Plaintiff Bardeguez did not know that the aforementioned Challenged Representations were false—i.e., that the Products contain non-natural, synthetic, artificial, and/or highly processed ingredients. (5) Plaintiff Bardeguez would not have purchased the Products had she known that the Challenged Representations were false. (6) Plaintiff Bardeguez continues to see the Products available for purchase, desires to purchase them, and would, indeed, purchase them again if the Challenged Representations were in fact true—i.e., that the Products do not contain any non-natural, synthetic, or highly processed ingredients. (7) Plaintiff Bardequez is not personally familiar with ingredients in the Products and does not possess any specialized knowledge, skill, experience, or education in the chemistry, manufacturing, and formulation of cosmetic or personal care products, similar to and including the Products, and their ingredients and/or formulations. Therefore, Plaintiff Bardequez has no way of determining whether the Challenged Representations on the Products are true. (8) Plaintiff Bardequez is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' labels.

B.      **Defendants**

10.     **Defendant Pfizer.**   Defendant Pfizer Inc. ("**Pfizer**") is a Delaware corporation with is principal place of business in New York, New York, and has been doing business in the State of New York during all relevant times. Directly and through its agents, Pfizer has substantial contacts with, and receives substantial benefits and income from, the State of New York. At all relevant times, Pfizer has been one of the owners, manufacturers, and distributors of the Products, and one of the companies that created, approved, authorized, and/or ratified the false, misleading, and deceptive labeling for the Products, including the False Advertising Claims.

11.     **Defendant GSK.**   Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC ("**GSK**") is a Delaware corporation with its principal place of business in Warren, New Jersey, and has been doing business in the State of New York during all relevant times. Directly and through its agents, GSK has substantial contacts with, and receives substantial benefits and income from, the State of New York. Since approximately mid-2019, GSK has been one of the owners, manufacturers, and distributors of the Products, and one of the companies that created, approved, authorized, and/or ratified the false, misleading, and deceptive labeling for the Products, including the False Advertising Claims.

12.     **"Defendant(s)."**   The term "**Defendant(s)**," as used herein, refers to the foregoing Defendants, individually and/or collectively, during the period of time said Defendant was responsible for manufacturing, distributing, advertising, marketing, labeling, and/or selling the Products.

13.     **Joint Venture.**   In or around mid-2019, GSK and Pfizer's consumer healthcare businesses were combined into one joint venture, named GSK Consumer Healthcare, under which Defendants have jointly advertised, marketed, manufactured, and sold the Products.

14.     **Conspiracy.**   Defendants acted in concert under a common scheme and aided and abetted one another in the decision to manufacture, label, advertise, market, package, and sell the Products in a false, deceptive and misleading manner.

15.     ***Respondeat Superior***.   Defendants and their agents manufactured, advertised, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading False Advertising Claims on the Products were prepared, authorized, ratified, and/or approved by Defendants and their agents, and, accordingly, disseminated throughout the State of

New York by Defendants and their agents in order to deceive and mislead consumers into purchasing the Products.

## V.   FACTUAL ALLEGATIONS

### A.   The Materiality and Consumers' Perception of the Products' Challenged Representations

16.    **Market Trend.** In recent years, consumers have poured billions of dollars into the natural cosmetics market. The global market in 2018 for natural cosmetics was estimated to have a revenue of $10.31 billion dollars and increases each year, with an estimated growth to $48.04 billion by 2025.[1]

17.    **Consumers' Desire for Natural Products.** In fact, consumers tend to purchase natural cosmetics more often than not, showing the growing importance of the natural cosmetic market.[2] Consumers value natural products for numerous reasons, including perceived benefits of avoiding diseases, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values. In response to consumers' desire for natural products, many companies, including Defendants, have scrambled to manufacture, market, and sell purportedly "natural" products in an effort to gain market share. Unfortunately, rather than creating the natural products consumers desire, Defendants have chosen instead to market the Products through deceptive labeling and advertising in order to convince consumers the products are natural when, in reality, they contain synthetic and artificial ingredients.

18.    **Governmental Regulatory Agencies' and Standard Dictionary Definitions**:

   a. **USDA.** The United States Department of Agriculture ("**USDA**"), pursuant to 7 U.S.C. § 6502, defines the term "synthetic" for agricultural products as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral

---

[1] *Natural Cosmetics Market Worth $48.04 Billion by* 2025, BLOOMBERG (June 11, 2019), https://www.bloomberg.com/press-releases/2019-06-11/natural-cosmetics-market-worth-48-04-billion-by-2025-cagr-5-01-grand-view-research-inc (last visited Mar. 11, 2022).
[2] *Global Market Value For Natural and Organic Cosmetics And Personal Care From 2018 To 2027,* STATISTA (Sept. 24, 2020), https://www.statista.com/statistics/673641/global-market-value-for-natural-cosmetics/ (last visited Mar. 11, 2022).

CLASS ACTION COMPLAINT

sources, except that such term shall not apply to substances created by naturally occurring biological processes."

b. **Dictionary.** The Merriam-Webster standard dictionary defines "natural" as "existing in or produced by nature: not artificial," and "not having any extra substances or chemicals added: not containing anything artificial."[3]

c. **FTC.** The Federal Trade Commission ("**FTC**") has cautioned "[m]arketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact." Guides for the Use of Environmental Marketing Claims, 75 FR 63552-01, 63586 (Oct. 15, 2010).

d. **Consumers' Reasonable Interpretation.** Consistent with dictionary definitions, regulatory definitions, and the FTC's guidance, reasonable consumers, like Plaintiffs, interpret the Natural Representations to mean that the Products do not contain any non-natural, artificial, synthetic, and/or highly processed ingredients.

19.    **Products.** As described *supra*, Defendants manufacturer, market, advertise, label, package, and sell the Products.

20.    **Conspicuousness of Challenged Representations.** Also as described *supra*, Defendants falsely and misleadingly label the Products with the Challenged Representations. The Challenged Representations are conspicuous and are prominently placed on each Product's primary display panel on the front label and/or packaging in bold colored font that heavily contrasts with the background. The Natural Representations are one of a few select claims that Defendants deliberately emphasize on the front labels in an effort to represent the Products as being all-natural and free of non-natural, synthetic, artificial, and/or highly processed ingredients. Consequently, consumers are drawn to the Challenged Representations. *See* **Exhibit 1** [Product Images].

21.    **Reasonable Consumer Perception and Reliance.** Based on the Challenged

---

[3]    Natural Definition, *Merriam-Webster.com*, 2011, available at https://www.merriam-webster.com/dictionary/natural (last visited Mar. 11, 2022).

Representations, reasonable consumers believe that the Products are natural. Put differently, reasonable consumers believe the Products do not contain any ingredients that are non-natural, synthetic, artificial, and/or highly processed.

B. **The Falsity of the Challenged Representations**

22. **Non-Natural Ingredients Contained in the Products.** In spite of the Products' labeling, the Products contain numerous non-natural, synthetic, artificial, and/or highly processed ingredients, including the following, in varying combinations:

(a) *Caprylic/capric triglycerides*: an artificial compound manufactured by hydrolyzing coconut oil, removing the free glycerin, and separating the medium chain length (MCL) fatty acids by fractional distillation. The acids are then blended in the proper ratio and re-esterified with glycerin. This compound is classified as a skin and eye irritant;

(b) *Capryloyl glycerin/sebacic acid copolymer:* are synthetically produced from capryloyl glycerin and sebacic acid monomers and function as polymers and film-forming agents as well as replacements for silicones in cosmetic formulas;

(c) *Carmine*: is a dye that is derived from mixing crushed cochineal bugs with an acidic alcohol solution. This dye can cause severe allergic reactions and is no longer classified as a "natural dye";

(d) *Citric acid:* synthetically made by the fermentation of glucose;

(e) *Flavor:* flavors are additives designed to mimic the taste of natural ingredients. They are a cheap way for manufacturers to make something taste natural, without using the actual ingredients, e.g., vanilla flavoring instead of natural vanilla;

(f) *Fragrance:* synthetic compounds composed of petroleum by-products such as benzene derivatives, aldehydes, toluene, and other known toxic chemicals;

(g) *Glyceryl stearate*: a synthetic emollient made by reacting glycerin with stearic acid;

(h) *Hydrogenated soybean oil and partially hydrogenated soybean oil:* highly-processed forms of soybean oil that have been chemically manufactured through a process called hydrogenation to convert polyunsaturated fatty acids to monounsaturated and saturated fatty acids, resulting in the artificial variety of trans fat;

(i) *Iron oxides*: are synthetic chemical compounds composed of iron and oxygen;

(j) *Octyldodecanol:* a long-chain synthetic alcohol chemically produced from natural fats and oils by reducing the fatty acid grouping to the hydroxyl function;

(k) *Tocopherols:* federal regulations classify as synthetic substances, even when extracted from natural oils, which is done through molecular distillation, solvent extraction, or absorption chromatography;

(l) *Tocopheryl acetate*: a synthetic, highly processed form of Vitamin E manufactured using acetic acid.

18.     **ChapStick 100% Natural Lip Butter.**  The ChapStick 100% Natural Lip Butter Products contain, in each of the scents, the following non-natural ingredients: (1) glyceryl stearate, (2) octyldodecanol and (3) tocopheryl acetate. Additionally, the Green Tea Mint scent, the Sweet Papaya scent, and the Cucumber Pear scent contains: (4) caprylic/capric triglyceride. Lastly, the pink grapefruit scent and the sweet papaya scent contains: (5) flavor, (6) hydrogenated soybean oil, and (7) tocopherol. *See* **Exhibit 1-1 to Exhibit 1-4** [Product Images/Ingredients].

19.     **ChapStick Total Hydration 100% Natural Lip Care.**  The ChapStick Total Hydration 100% Natural Lip Care Products contain, in each of its scents, the following non-natural ingredients: (1) caprylic/capric triglyceride, (2) flavor, (3) octyldodecanol, (4) tocopherol, (5) tocopheryl acetate, and (6) glyceryl stearate. Additionally, the Eucalyptus Mint and the Fresh Citrus scents contain: (7) hydrogenated soybean oil. Lastly, the Soothing Vanilla scent contains: (8) partially hydrogenated soybean oil. *See* **Exhibit 1-5 to Exhibit 1-8** [Product Images/Ingredients].

20.     **ChapStick Total Hydration Essential Oils Lip Balm.** The ChapStick Total Hydration Essential Oils Lip Balm Products contain, in each of its scents, the following non-natural ingredients: (1) flavor, (2) glyceryl stearate, (3) hydrogenated soybean oil, (4) tocopherol, and (5) tocopheryl acetate. Additionally the Chill, Happy, and Peace scents contain: (6) caprylic/capric triglyceride. Lastly, the Chill, Energy, Happy, and Peace scents contain: (7) octyldodecanol. *See* **Exhibit 1-9 to Exhibit 1-13** [Product Images/Ingredients].

21.     **ChapStick Total Hydration Moisture + Tint Lip Balm.** The ChapStick Total Hydration Moisture + Ting Lip Balm Products contain, in each of its shades, the following non-natural ingredients: (1) carmine, (2) glyceryl stearate, (3) hydrogenated soybean oil, (4) octyldodecanol, (5) tocopherol, and (6) tocopheryl acetate. Additionally, the Coral Blush, Rose Petal, Pink Nude, Flaunt It Fuchsia, Hello Bordeaux, and the Sunset Nude shades contain: (7) caprylic/capric triglyceride. The Coral Blush, Rose Petal, Pink Nude, Flaunt It Fuchsia, Hello Bordeaux, Merlot, and Sunset Nude shades contain: (8) flavor. Lastly, the Coral Blush, Rose Petal, Pink Nude, Merlot, Sunset Nude, and Warm Nude shades contain: (9) iron oxides. *See* **Exhibit 1-14 to Exhibit 1-21** [Product Images/Ingredients].

22.     **ChapStick Total Hydration Moisture + Tint SPF 15 Lip Balm.** The ChapStick Total Hydration Moisture + Tint SPF 15 Products contain, in each of its scents, the following non-natural

ingredients: (1) carmine, (2) fragrance, (3) iron oxides, (4) tocopherol, and (5) tocopheryl acetate. *See* **Exhibit 1-22 to Exhibit 1-24** [Product Images/Ingredients].

23.    **ChapStick Total Hydration Natural Lip Scrub.** The ChapStick Total Hydration Natural Lip Scrub Products contain, each of its flavors, the following non-natural ingredients: (1) capryloyl glycerin/sebacic acid copolymer, (2) citric acid, and (3) tocopherol.  Additionally, the Sugar Plum flavor contains: (4) caprylic/capric triglyceride, (5) carmine, (6) flavor, and (7) iron oxides. *See* **Exhibit 1-25 to Exhibit 1-26** [Product Images/Ingredients].

24.    **The Natural Representations Are False, Misleading, and Deceptive.**  Contrary to the Natural Representations, the Products are not natural because they contain non-natural, synthetic, artificial, and/or highly processed ingredients. No reasonable definition of "100% Natural," "Natural," "Naturally Sourced Ingredients," and "100% Naturally Sourced Ingredients" includes ingredients that are subjected to extensive, transformative processing before their inclusion in a product, regardless of whether the ingredient may have been, at one time, truly "Natural."  Put differently, it is entirely deceptive to label a product as being natural or made of naturally sourced ingredients, if that product—like the Products at issue—was "formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources."  *See* 7 U.S.C. § 6502. Indeed, labeling the products with the Natural Representations when they contain **any** non-natural, synthetic, artificial, and/or highly processed ingredients is wholly misleading and deceptive.  That is because the Natural Representations cause reasonable consumers, including Plaintiffs, to believe the Products do not contain non-natural, synthetic, artificial, and/or highly processed ingredients.

C.    **Plaintiffs and Reasonable Consumers Were Misled by the Products**

25.    **Deception.** Defendants' labeling and advertising of the Products with the Challenged Representations, when they are not natural because they contain non-natural, synthetic, artificial, and/or highly processed ingredients, misleads and deceives reasonable consumers, including Plaintiffs, into purchasing the Products to their financial detriment.

26.    **Misrepresentation/Omission.**    As set forth herein, the Natural Representations misrepresent that the Products do not contain any non-natural, synthetic, artificial, and/or highly processed ingredients, because the Products actually contain a combination of non-natural, synthetic, artificial,

and/or highly processed ingredients.

27.     **Material.** The Challenged Representations were and are material to reasonable consumers, including Plaintiffs, in making the decision to purchase the Products, as set forth herein.

28.     **Reliance.**   Reasonable consumers, including Plaintiffs, relied and rely the Challenged Representations in deciding to purchase the Products, as set forth herein.

29.     **Consumers Lack Knowledge of Falsity.**   Consumers, including Plaintiffs, who purchased the Products, did not know, and had no reason to know, at the time of purchase, that the Products' Challenged Representations were false, misleading, deceptive, and unlawful as set forth herein.

30.     **Defendants' Knowledge.**   Defendants knew, or should have known, that the Natural Representations were false, misleading, deceptive, and unlawful, at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations, and Defendants intentionally and deliberately used the Challenged Representations to cause Plaintiffs and similarly situated consumers to buy them, believing that the Products were natural.

     a.   The conspicuousness of the Challenged Representations on the Products' labels and packaging and the repeated use of the Challenged Representations in advertisements demonstrate the Defendants' awareness of the materiality of these representations and Defendants' understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations.

     b.   Generally, manufacturers and marketers repeat marketing messages to emphasize and characterize a brand or product line. Similarly, they reserve the primary display panel of labels on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products.

     c.   Defendants, as the manufacturers, formulated the Products with the non-natural, synthetic, artificial, and/or highly processed ingredients and otherwise approved their inclusion in the Products. Defendants, as the manufacturers, had exclusive control over the Challenged Representations' inclusion on the Products' labels and in their advertisements—i.e., Defendants readily and easily could have removed the Challenged Representations or refrained from using them on the labels and

advertisements of the Products.

    d.    Therefore, Defendants knew, or should have known, at all relevant times, that the Challenged Representations are false and/or deceptive and that reasonable consumers, including Plaintiffs, are being misled into buying the Products based on the belief that the Products are natural. In this way, Defendants either intentionally or recklessly defrauded consumers, including Plaintiffs, into buying the Products.

31.    **Detriment.**  Plaintiffs and similarly situated consumers would not have purchased the Products, or would not have purchased the Products for as high a price, if they had known that the Challenged Representations were false and, therefore, the Products did not have the attribute claimed, promised, warranted, advertised, and represented. Accordingly, based on Defendants' material misrepresentations and omissions, reasonable consumers, including Plaintiffs, purchased the Products to their detriment.

    D.    <u>**The Products Are Substantially Similar**</u>

32.    As described *supra*, Plaintiffs purchased the Purchased Products. The additional products identified in paragraph 3 (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Products.

    a.    **Defendants.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by the Defendants.

    b.    **Brand.** All Products are sold under the same brand name: ChapStick.

    c.    **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

    d.    **Purpose.** All Products are intended for the primary purpose of moisturizing lips.

    e.    **Application.** All Products are applied in the same manner—directly onto lips.

    f.    **Misrepresentations.** All Products contain the same Challenged Representations, conspicuously and prominently placed on the primary display panel of their front label and/or packaging.

    g.    **Packaging.** All Products are packaged in similar packaging.

    h.    **Key Ingredients.** All Products contain a combination of the same non-natural,

artificial, synthetic, and highly processed ingredients.  In particular, the Purchased Products contain non-natural ingredients that are found in the Unpurchased Products.

i.   **Misleading Effect.**  The misleading effect of the Challenged Representations on consumers is the same for all Products—consumers pay for natural products, but receive products that contain non-natural, artificial, syntenic, and/or highly processed ingredients.

## VI.   <u>CLASS ACTION ALLEGATIONS</u>

33.   **Incorporation by Reference.** Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

34.   **Class Definition.**  Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated, and as members of the Classes defined as follows:

> All residents of New York who, within the applicable statute of limitation periods, purchased the Products for purposes other than resale (the "**Class**").

35.   **Class Definition Exclusions.**  Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

36.   **Reservation of Rights to Amend Class Definition.**  Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

37.   **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of thousands of purchasers (if not more) dispersed throughout the State of New York. Accordingly, it would be impracticable to join all members of the Class before the Court.

38.   **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within

the common questions of law or fact are:

a.   Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.   Whether Defendants made false and/or misleading statements to the consuming public using the Natural Representations on the Products;

c.   Whether Defendants' labeling and packaging of the Products is misleading and/or deceptive;

d.   Whether Defendants' representations concerning the Products were likely to deceive a reasonable consumer;

e.   Whether Defendants represented that the Products have characteristics, benefits, or qualities they do not have;

f.   Whether Defendants advertised the Products with intent not to sell them as advertised;

g.   Whether Defendants falsely advertised the Products;

h.   Whether Defendants' conduct constitutes breach of express and/or implies warranties;

i.   Whether Defendants' conduct caused injury to Plaintiffs and the Class; and

j.   Whether Plaintiffs and the Class are entitled to damages.

39.   **Typicality:** Plaintiffs' claims are typical of the claims of the Class Members Plaintiffs seek to represent because Plaintiffs, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

40.   **Adequacy:** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

41.   **Superiority and Substantial Benefit**: A class action is superior to other methods for the fair and efficient adjudication of this action, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.  The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.  Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c.  Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.  When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.  This action presents no difficulty that would impede their management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendants.

42.    **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

43.    **Manageability.**  Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.    CAUSES OF ACTION

### COUNT ONE
**Violation of New York's Gen. Bus. Law § 349**
(*On Behalf of the New York Subclass*)

44.    **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

45.    **New York Subclass.** This cause of action is brought pursuant to New York's Gen. Bus. Law section 349, *et seq*., on behalf of Plaintiffs and a New York Subclass who purchased the Products within the applicable statute of limitations.

46.    **Deceptive Trade Practices Act.** New York Gen. Bus. Law, section 349, *et seq.* prohibits the "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state."

47.    **Defendants' Deceptive Acts.** Defendants, in their advertising and packaging of the

22

Products, made false, misleading, and deceptive representations and/or omissions about the Products to mislead consumers into believing the Products contain only natural ingredients, and do not contain any non-natural, synthetic, and/or highly processed ingredients.

48.     **Defendants' Deceptive Actions Cause Purchase of Products.** Defendants' labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products are truly natural and do not contain any non-natural, synthetic, artificial, and/or highly processed ingredients.

49.     **Deceptive & Material Challenged Representations.** The Challenged Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.  Defendants knew consumers would purchase the Products and/or pay more for them under the false belief that the Lip Care Products were natural, when they are not.  By advertising so prominently that the Lip Care Products were natural, Defendants have demonstrated that the "natural" claim is material to consumers.  As a result of their deceptive acts and practices, Defendants have sold thousands or tens of thousands (or more) of Lip Care Products to unsuspecting consumers across New York.  If Defendants had advertised their Lip Care Products truthfully and in a non-misleading fashion, Plaintiffs, and the New York Subclass Members, would not have purchased the Products or would not have paid as much.

50.     **Reasonable and Detrimental Reliance.** Plaintiffs and the New York Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Products.

51.     **Plaintiffs Have Standing.** Plaintiffs have standing to pursue this claim because Plaintiffs have suffered an injury-in-fact and have lost money or property as a result of Defendants' deceptive acts and practices. Specifically, Plaintiffs purchased the Products for their own personal use.  In doing so, Plaintiffs relied upon Defendants' false, misleading, and deceptive representations that the Products were, and are, natural, when they were, and are, not.  Plaintiffs spent money in the transaction that they otherwise would not have spent had they known the truth about the Challenged Representations.

52.     **Injury in Fact.** Plaintiffs and the New York Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendants' deceptive advertising—namely

Plaintiffs and the New York Subclass lost the purchase price for the Products they bought from the Defendants.

53.     **Causation/Damages.** As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiffs and the New York Subclass were harmed in that they: (1) paid money for the Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than what Defendants advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendants' representations about the purported natural composition of the Products were truthful. Accordingly, Plaintiffs seek to enjoin Defendants' unlawful acts and practices and to recover their actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<u>**COUNT TWO**</u>
**Violation of New York's Gen. Bus. Law § 350**
(***On Behalf of the New York Subclass***)

54.     **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

55.     **New York Subclass.** Plaintiffs bring this claim individually and on behalf of the New York Subclass who purchased the Products within the applicable statute of limitations.

56.     **False Advertising Standard.** The New York False Advertising Law, codified at Gen. Bus. Law section 350, *et seq.*, prohibits advertising, including labeling, that "is misleading in a material respect."

57.     **False & Material Challenged Representations Disseminated to Public.** Defendants violated section 350 when they advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Natural Representations, disseminated to the public through the Products' labeling, packaging, and advertising.  These representations were false because the Products do not conform to them.  The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

58.     **Knowledge.** In making and disseminating the representations alleged herein, Defendants knew or should have known that the representations were untrue or misleading.

59.   **Intent to Sell.** Defendants' Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiffs and the New York Subclass, to purchase the Products.

60.   **Standing.** Plaintiffs have standing to pursue this claim because Plaintiffs have suffered an injury-in-fact and have lost money or property as a result of Defendants' deceptive acts and practices. Specifically, Plaintiffs purchased the Products for personal use.  In doing so, Plaintiffs relied upon Defendants' false, misleading, and deceptive representations that the Products were natural, when they were not.  Plaintiffs spent money in the transaction that they otherwise would not have spent had they known the truth about Defendants' advertising claims.

61.   **Causation/Damages.** As a direct and proximate result of Defendants' misconduct, Plaintiffs and the New York Subclass were injured in that they: (1) paid money for the Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than what Defendants advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendants' representations about the Products' purported "natural" composition were truthful. Accordingly, on behalf of Plaintiffs and the Members of the New York Subclass, Plaintiffs seek to enjoin Defendants' unlawful acts and practices and recover their actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<u>**COUNT THREE**</u>
**Breach of Warranty**
(*On Behalf of the Nationwide Class and New York Subclass*)

62.   **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

63.   **Nationwide Class & New York Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and New York Subclass (the "**Class**") who purchased the Products within the applicable statute of limitations.

64.   **Express Warranty.** By advertising and selling the Products at issue, Defendants made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class and Defendants. Defendants

purport, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

65. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendants, merchants of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Defendants—to wit, that the Products, among other things, conform to the Challenged Representations.

66. **Breach of Warranties.** Contrary to Defendants' warranties, the Products do not conform to the Challenged Representations and, therefore, Defendants breached their warranties about the Products and their qualities.

67. **UCC 2-607 – Prelitigation Notice.** Pursuant to UCC section 2-607, prior to the filing of this complaint, on or about December 15, 2020, Plaintiffs' counsel, acting on behalf of a Nationwide and California Sub-Class, sent Defendants a notice letter via certified mail, return receipt requested (the "**California Notice Letter**") and on June 17, 2022, concurrently with the filing of this complaint, Plaintiffs' counsel, acting on behalf of the Plaintiffs and the Class, sent Defendants a notice letter via certified mail, return receipt requested (the "**New York Notice Letter**") (collectively, the "**Notice Letters**"). The Notice Letters advised Defendants that it was in violation of UCC section 2-607 and New York and California state consumer protection laws, as set forth above, and demanded that Defendants cease and desist from such violations and make full restitution by refunding the monies received therefrom to Plaintiffs and all members of the Class. The form, content, and delivery of the Notice Letter complied with UCC section 2-607.

68. **Causation/Remedies.** As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and the Class were harmed in that they: (1) paid money for Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendants advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendants' representations about the Products'

purported "natural" composition were truthful.  Had Defendants not breached their warranties by making the false representations alleged herein, Plaintiffs and the Class would not have purchased the Products or would not have paid as much as they did for them.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants as follows:

    a.  **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

    b.  **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

    c.  **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

    d.  **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

    e.  **Pre/Post-Judgment Interest:** For an order awarding pre-and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

    f.  **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: June 29, 2022                    Respectfully submitted,

                                        **CLARKSON LAW FIRM**

                                        */s/ Ryan J. Clarkson*
                                        Ryan J. Clarkson (NY Bar No. 5786967)
                                        Katherine A. Bruce (*pro hac vice* pending)
                                        Kelsey J. Elling (*pro hac vice* pending)
                                        22525 Pacific Coast Highway
                                        Malibu, CA 90265
                                        Tel: (213) 788-4050
                                        Fax: (213) 788-4070
                                        Email: rclarkson@clarksonlawfirm.com
                                                kbruce@clarksonlawfirm.com
                                                kelling@clarksonlawfirm.com

                                        **MOON LAW APC**
                                        Christopher D. Moon (*pro hac vice* pending)
                                        Kevin O. Moon (*pro hac vice* pending)
                                        228 Hamilton Ave., 3rd Fl
                                        Palo Alto, CA 94301
                                        Tel: (619) 915-9432
                                        Fax: (650) 618-0478
                                        Email: chris@moonlawapc.com
                                                kevin@moonlawapc.com

                                        *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: June 29, 2022                    Respectfully submitted,

                                        **CLARKSON LAW FIRM**

                                        */s/ Ryan J. Clarkson*
                                        Ryan J. Clarkson (NY Bar No. 5786967)
                                        Katherine A. Bruce (*pro hac vice* pending)
                                        Kelsey J. Elling (*pro hac vice* pending)
                                        22525 Pacific Coast Highway
                                        Malibu, CA 90265
                                        Tel: (213) 788-4050
                                        Fax: (213) 788-4070
                                        Email: rclarkson@clarksonlawfirm.com
                                               kbruce@clarksonlawfirm.com
                                               kelling@clarksonlawfirm.com

                                        **MOON LAW APC**
                                        Christopher D. Moon (*pro hac vice* pending)
                                        Kevin O. Moon (*pro hac vice* pending)
                                        228 Hamilton Ave., 3rd Fl
                                        Palo Alto, CA 94301
                                        Tel: (619) 915-9432
                                        Fax: (650) 618-0478
                                        Email: chris@moonlawapc.com
                                               kevin@moonlawapc.com

                                        *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT